# Matter of E. E. HERNANDEZ, Respondent

*Decided September 12, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Malicious vandalism in violation of section 594(a) of the California Penal Code with a gang enhancement under section 186.22(d) of the California Penal Code, which requires that the underlying offense be committed for the benefit of a criminal street gang with the specific intent to promote criminal conduct by gang members, is categorically a crime involving moral turpitude.

FOR RESPONDENT: Andrew L. Reback, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jailuk Parrino, Senior Attorney

BEFORE: Board Panel: MALPHRUS, MULLANE, and CREPPY, Board Members.

MALPHRUS, Board Member:

In a decision dated April 18, 2012, an Immigration Judge terminated the removal proceedings against the respondent without prejudice. The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

The respondent is a native and citizen of Mexico who adjusted his status to that of a lawful permanent resident on April 26, 2008. In 2011, in the Superior Court of California for the County of Los Angeles, he was charged in count 1 of a felony complaint with committing vandalism causing over $400 in damages in violation of section 594(a) of the California Penal Code with a gang enhancement. On August 31, 2011, the respondent pled no contest to count 1 and admitted the gang enhancement allegation pursuant to section 186.22(d) of the California Penal Code, which provides that the offense was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Concluding that there was a factual basis for the plea, the criminal court found the respondent guilty, suspended the imposition of his sentence, and placed him on probation for 3 years with the condition that he serve 364 days in jail.

On March 9, 2012, the DHS issued a notice to appear charging the respondent with removability under section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2012), as an alien convicted of a crime involving moral turpitude. The respondent contested the charge, and the Immigration Judge granted his motion to terminate the proceedings, concluding that the DHS did not meet its burden to show by clear and convincing evidence that the respondent's offense was a crime involving moral turpitude. On appeal, the DHS asserts that the Immigration Judge erred in determining that the respondent was not removable under section 237(a)(2)(A)(i) of the Act. We agree.[1]

We have interpreted "moral turpitude" as generally referring to conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Ortega-Lopez*, 26 I&N Dec. 99, 100 (BIA 2013) (citation and internal quotation mark omitted). For a crime to involve moral turpitude, there must be two essential elements, namely, reprehensible conduct and a culpable mental state. *Id.*; *Matter of Louissaint,* 24 I&N Dec. 754, 756−57 (BIA 2009) (stating that a "crime involving moral turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness").

"In considering whether a particular offense constitutes a crime involving moral turpitude, we must first engage in the traditional categorical analysis of the elements of the statute." *Matter of Louissaint*, 24 I&N Dec. at 757 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). Under this approach, "we compare the statute of conviction to the generic definition of moral turpitude. If the statute bans only actions that involve moral turpitude, then it is categorically a crime involving moral turpitude." *Rohit v. Holder*, 670 F.3d 1085, 1088 (9th Cir. 2012) (citation omitted); *see also Olivas-Motta v. Holder*, 746 F.3d 907, 916 (9th Cir. 2013) (limiting an Immigration Judge "to the record of conviction in determining whether an alien has been 'convicted of' a [crime involving moral turpitude]"). For a crime not to be a categorical crime involving moral turpitude, there must be a "realistic probability," as opposed to a "theoretical possibility," that the statute of conviction would be applied to reach conduct that does not involve moral turpitude. *Matter of Louissaint*, 24 I&N Dec. at 757; *see also Gonzales v. Duenas-Alvarez*, 549 U.S. at 193;

---

[1] We review the findings of fact made by the Immigration Judge to determine if they were clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i) (2014). We review de novo all other issues, including whether the parties have met the relevant burden of proof. 8 C.F.R. § 1003.1(d)(3)(ii).

*Rohit v. Holder*, 670 F.3d at 1088−89; *Matter of Cortez Medina*, 26 I&N Dec. 79, 82 (BIA 2013).

The respondent was convicted of maliciously defacing the property of another with graffiti or other inscribed material. Cal. Penal Code § 594(a) (West 2011). Further, pursuant to the gang enhancement, the respondent admitted that he committed this crime for the benefit of a criminal street gang with the specific intent to promote criminal conduct by gang members. Cal. Penal Code § 186.22(d) (West 2011). Under California law, a gang enhancement can be imposed only if each element of the enhancement is proven to a jury beyond a reasonable doubt or admitted by the defendant in connection with a plea agreement. *See In re Daniel C.*, 125 Cal. Rptr. 3d 337, 342−43 (Cal. Ct. App. 2011). Accordingly, a California conviction involving the application of this enhancement is considered a conviction for the enhanced offense under the immigration laws. *See Matter of Martinez-Zapata*, 24 I&N Dec. 424, 426 (BIA 2007).

In analyzing whether the respondent was convicted of a crime involving moral turpitude, the Immigration Judge erred by separately analyzing whether malicious vandalism under section 594(a) of the California Penal Code and a violation of section 186.22(d) involve moral turpitude. For purposes of determining whether the respondent has been convicted of a crime involving moral turpitude, we look to the respondent's "offense of conviction," which is not just malicious vandalism but, rather, malicious vandalism that was committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(d).

A malicious act of vandalism under California law involves "damage or destruction to the property of another which can be remedied only at a direct cost to the property owner" and "planning, execution and a malicious intent on the part of the offender." *United States v. Martinez*, 69 F.3d 999, 1000−01 (9th Cir. 1995). "The malice requirement of California Penal Code section 594 establishes a general 'readiness to do evil.'" *Id.* at 1001 (quoting *People v. Campbell*, 28 Cal. Rptr. 2d 716, 721 (Cal. Ct. App. 1994)). *See generally Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1213 (9th Cir. 2013) ("Crimes of moral turpitude generally involve some 'evil intent.'"); *Matter of Flores*, 17 I&N Dec. 225, 227 (BIA 1980) ("An evil or malicious intent is said to be the essence of moral turpitude."); *Matter of M-*, 3 I&N Dec. 272 (BIA 1948) (finding malicious destruction of property to be a crime involving moral turpitude where malicious intent was required by statute). When malicious vandalism is committed for the benefit of a criminal street gang with the specific intent to promote

criminal conduct by gang members, moral turpitude is categorically intrinsic to the offense.[2]

Criminal gangs pose a serious danger to public safety and have a taxing burden on society and our moral culture. *See People v. Rodriguez*, 290 P.3d 1143, 1148 (Cal. 2012) ("Crimes committed by gang members . . . pose dangers to the public and difficulties for law enforcement not generally present when a crime is committed by someone with no gang affiliation." (quoting *People v. Albillar*, 244 P.3d 1062, 1068 (Cal. 2010)) (internal quotation marks omitted)); *see also City of Chicago v. Morales*, 527 U.S. 41, 99 (1999) (Thomas, J., dissenting) ("Gangs fill the daily lives of many of our poorest and most vulnerable citizens with a terror that [is not given] sufficient consideration, often relegating them to the status of prisoners in their own homes.").

In 1988, the California Legislature enacted the Street Terrorism Enforcement and Prevention Act ("STEP Act") in an attempt to eradicate criminal activity by street gangs.[3] 1988 Cal. Legis. Serv. 1242 (West); *see also* Cal. Penal Code § 186.20−.27 (West 2014); *People v. Vy*, 19 Cal. Rptr. 3d 402, 411 (Cal. Ct. App. 2004). The Legislature "found that gangs and gang-related activities constituted a 'clear and present danger to public order and safety.'" *People v. Arroyas*, 118 Cal. Rptr. 2d 380, 385 (Cal. Ct. App. 2002) (quoting Cal. Penal Code § 186.21). By creating the gang enhancement, the STEP Act focused "upon 'patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs.'" *People v. Rodriguez*, 290 P.3d at 1146 (quoting Cal. Penal Code § 186.21); *see also People v. Albillar*, 244 P.3d at 1072 ("Committing a crime with fellow gang members . . . enables the participants to rely on intimidation, which is 'one of [the gang's] mainstream daily objectives in furthering their gang interest.'" (alteration in original) (citation omitted)).

That being said, section 186.22(d) is a targeted enhancement for criminal activity with significant limitations on its reach. The underlying offense must be committed for the benefit of a "criminal street gang," which is defined as any ongoing organization, association, or group of three or more persons that has a common name or identifying sign or symbol and

---

[2] We need not reach the question whether the offense of malicious vandalism under California law categorically involves moral turpitude without a gang enhancement.

[3] Following passage of the STEP Act, other States enacted similar legislation to combat gang conduct. *See, e.g.*, Ariz. Rev. Stat. Ann. § 13-2321 (2007); La. Rev. Stat. Ann. § 15:1403 (1990); Minn. Stat. Ann. § 609.229 (West 1991); Miss. Code Ann. § 97-44-3 (West 1996); Mo. Ann. Stat. § 578.423 (West 1993); Nev. Rev. Stat. Ann. § 193.168 (West 1991).

that, as one of its primary activities, commits one or more of the specified crimes defining a "pattern of criminal gang activity." Cal. Penal Code § 186.22(f). These crimes, enumerated in section 186.22(e), include violent crimes and theft, firearms, and drug offenses, as well as the respondent's offense of felony vandalism under section 594(a) of the California Penal Code.

Furthermore, the gang enhancement requires more than a general intent to commit a crime. *People v. Ramon*, 96 Cal. Rptr. 3d 459, 466 (Cal. Ct. App. 2009). The California Legislature required that the underlying crime be committed with the specific intent to promote, further, or assist the criminal conduct of a street gang to make it "clear that a criminal offense is subject to increased punishment under the STEP Act only if the crime is 'gang related,'" given that not all crimes committed by gang members are related to a gang. *People v. Albillar*, 244 P.3d at 1071 (quoting *People v. Gardeley*, 927 P.2d 713, 724 (Cal. 1996)) (internal quotation marks omitted). It is only when a defendant's intentional acts are "combined with his knowledge that those acts would assist crimes by fellow gang members" that there is sufficient evidence of the requisite specific intent to support a gang enhancement. *People v. Morales*, 5 Cal. Rptr. 3d 615, 633 (Cal. Ct. App. 2003). Thus, to be convicted of felony vandalism with a gang enhancement, the offender must have been found beyond a reasonable doubt to have had a malicious or evil intent in committing vandalism for the benefit of a criminal street gang and to have done so with the specific intent to promote criminal activity by gang members.

It is noteworthy that the gang enhancement does not criminalize gang membership itself. *In re Alberto R.*, 1 Cal. Rptr. 2d 348, 354 (Cal. Ct. App. 1991) ("Section 186.22 does not prohibit membership; it prohibits the promotion, furtherance or assistance in any felonious criminal conduct by members." (citation and internal quotation mark omitted)). The statute does not encompass conduct engaged in by a lone individual for his own purposes or unintended conduct that incidentally may have some benefit to a gang. *See People v. Rios*, 165 Cal. Rptr. 3d 687, 713 (Cal. Ct. App. 2013). It addresses the threat that criminal gang activity poses to public safety and public order in a targeted manner by requiring that the offender have committed a specified offense with the specific intent to advance criminal gang conduct.

The crime of vandalism is a well-recognized way of advancing gang activity. The legislative history regarding a 1993 amendment to the offense of malicious vandalism under section 594(a) of the California Penal Code discussed the public opposition to graffiti and the high cost of removing it, also noting that "the blight caused by graffiti 'affects all communities' and causes '[t]urf wars' and gang violence, which can lead

to murder." *In re Rudy L.*, 34 Cal. Rptr. 2d 864, 867 (Cal. Ct. App. 1994) (alteration in original) (citation omitted).

We conclude that it is inherently reprehensible to maliciously deface, damage, or destroy property for the benefit of a criminal street gang with the specific intent to promote criminal conduct by gang members in violation of sections 594(a) and 186.22(d) of the California Penal Code. *See Matter of Louissaint*, 24 I&N Dec. at 756−57. There has been no showing that there is a realistic probability that an individual would be prosecuted under these statutes for conduct that does not rise to the level of moral turpitude. *Id.* at 757; *see also Gonzales v. Duenas-Alvarez*, 549 U.S. at 193. Consequently, the respondent's conviction for malicious vandalism in conjunction with the section 186.22(d) gang enhancement is for a crime involving moral turpitude.

The respondent is removable under section 237(a)(2)(A)(i) of the Act. The Immigration Judge therefore erred in terminating the proceedings. Accordingly, the DHS's appeal will be sustained and the record will be remanded to give the respondent an opportunity to apply for relief from removal. On remand, the parties should be permitted to make additional arguments and to present any relevant evidence, including the evidence that was submitted with the DHS's motion to remand to submit additional charges. *See* 8 C.F.R. §§ 1003.30, 1240.10(e) (2014).

**ORDER:** The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.