**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUAN CARLOS HERNANDEZ-GONZALEZ, | No. 11-70359 |
| *Petitioner*, | |
| | Agency No. A078-051-071 |
| v. | |
| ERIC H. HOLDER, JR., Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 3, 2014—Pasadena, California

Filed February 13, 2015

Before: Stephen Reinhardt, Raymond C. Fisher,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Reinhardt

**SUMMARY**[*]

**Immigration**

The panel granted Juan Carlos Hernandez-Gonzalez's petition for review from the Board of Immigration Appeals' decision finding that his conviction for weapons possession, when enhanced for sentencing purposes by a gang activity conviction, constituted a categorical crime involving moral turpitude.

The panel held that the BIA erred in finding that Hernandez-Gonzalez's felony conviction for possession of a billy club, when enhanced under California Penal Code § 186.22(b)(1) "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members," constituted a crime involving moral turpitude. The panel did not defer to the BIA's conclusion in its subsequently published decision, *Matter of E. E. Hernandez*, 26 I. & N. Dec. 397 (BIA 2014), that a gang enhancement can render a non-turpitudinous crime a CIMT. The panel rather held that the determination must be based on the underlying crime of conviction to which the enhancement is attached at sentencing.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Deanna L. Kwong (argued), Covington & Burling LLP, Redwood Shores, California, for Petitioner.

Lynda Anh Do (argued), Attorney; Tony West, Assistant Attorney General; Emily Anne Radford, Assistant Director; Sarah L. Vuong and Stephen Elliott, Attorneys; Joyce R. Branda, Acting Assistant Attorney General; Stephen J. Flynn, Assistant Director, United States Department of Justice, Washington, D.C. for Respondent.

## OPINION

REINHARDT, Circuit Judge:

Does a conviction for a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" constitute a crime involving moral turpitude?  We hold that the answer is no.

I

Juan Carlos Hernandez-Gonzalez is a native and citizen of Mexico who entered the United States without inspection in 1989 around the age of three.  On November 5, 2003, he adjusted his status to lawful permanent resident.  He is married to a United States citizen and has one United States citizen daughter.  He has two separate state criminal convictions.  First, on June 25, 2007, he was convicted of a violation of California Penal Code § 1320(b) for failing to appear to answer a charge for the transportation of a

controlled substance.**[1]**    Second, on January 24, 2008, he pleaded nolo contendere to a violation of California Penal Code § 12020(a)(1) for possession of a billy club.  He also admitted to an enhancement for that crime under California Penal Code § 186.22(b)(1), which provides an additional penalty, here, an additional two-year sentence, for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  Cal. Penal Code § 186.22(b)(1).

Hernandez-Gonzalez was served a Notice to Appear in March 2010, and ultimately charged**[2]** as removable on four grounds: for having been convicted of (1) a crime involving moral turpitude within five years after the date of admission for which a sentence of one year or longer may be imposed, 8 U.S.C. § 1227(a)(2)(A)(i); (2) two crimes of moral turpitude any time after admission, 8 U.S.C. § 1227(a)(2)(A)(ii); (3) an aggravated felony, under 8 U.S.C. § 1227(a)(2)(A)(iii), namely, a crime of violence as specified in 8 U.S.C. § 1101(a)(43)(F); and (4) an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), namely, as defined in 8 U.S.C. § 1101(a)(43)(T), "an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed[.]"

---

**[1]** The underlying controlled substances charge appears to have been dismissed, but there are no documents in the record to that effect, nor was it considered by the Immigration Judge ("IJ").

**[2]** The Notice to Appear was amended twice during the proceedings to allow the government to add additional grounds of removability.

The IJ found Hernandez-Gonzalez to be removable as charged on all of the grounds of removability except charge (2), which alleged that he had been convicted of two or more crimes involving moral turpitude. The IJ found that the weapons possession conviction coupled with the "specific intent to further gang activity of a criminal nature" was a conviction both for a crime involving moral turpitude and a crime of violence, and found that the conviction for failure to appear was an aggravated felony.

The BIA affirmed the IJ's determination as to charge (1) that Hernandez-Gonzalez's "conviction for weapons possession, enhanced for sentencing purposes for gang activity," constituted a crime of moral turpitude. It held that "engaging in any of the conduct criminalized under California Penal Code § 12020(a)(1) for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members in violation of § 186.22(b)(1), is categorically a crime involving moral turpitude." The BIA reasoned that "[a]cting with the specific intent to promote, further, or assist in criminal gang activity is inherently base, vile, and depraved, and such activity is contrary to accepted rules of morality and duties owed to society in general." It asserted, further: "We are unaware of any application of § 186.22(b)(1) to conduct that does not involve moral turpitude, and have no reason to believe there exists a realistic probability that the statute would be so applied."

Because Hernandez-Gonzalez entered the United States without inspection or admission, the date of his adjustment of status serves as a date of admission that triggers the five-year

clock under 8 U.S.C. § 1227(a)(2)(A)(i).**³** *United States v. Hernandez-Arias*, 757 F.3d 874, 880 (9th Cir. 2014) ("Certain events, such as adjustment to [legal permanent resident] status . . . , qualify as 'admission' for immigration purposes."); *see also Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134–35 (9th Cir. 2001) (deeming alien who entered without inspection admitted upon adjustment to lawful permanent resident status).    Here, Hernandez-Gonzalez adjusted his status to lawful permanent resident on November 5, 2003, and was convicted of this crime on January 24, 2008. Consequently, the crime falls within the five-year period for deportable offenses under § 1227(a)(2)(A)(i), and thus within the period specified in the first ground of removal.

The BIA made no determination with respect to grounds (3) and (4), but rejected Hernandez-Gonzalez's argument that the removal order was invalid because he did not receive a copy.  Hernandez-Gonzalez did not appeal the BIA's ruling on the latter issue to this court, and so we do not address that part of its decision.

II

Determining whether a conviction under a state statute is categorically a conviction for a "crime involving moral turpitude" under 8 U.S.C. § 1227(a)(2)(A)(i) is a two-step

---

**³** Section 1227(a)(2)(A)(i) provides: "Any alien who--(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."

process. *Ceron v. Holder*, 747 F.3d 773, 778 (9th Cir. 2014) (en banc).

> The first step is to identify the elements of the statute of conviction. Because the BIA lacks expertise in identifying the elements of state statutes, we review the first step de novo. The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition. Because the BIA has expertise in that task, we defer to its conclusion if warranted, following the *Chevron* framework if the decision is published or directly controlled by a published decision, and otherwise following the *Skidmore* framework.

*Id.* (internal citations and quotation marks omitted); *see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

A

The first step of the analysis is to identify the elements of the statute of conviction.[4]  *Ceron*, 747 F.3d at 778. Hernandez-Gonzalez was convicted of violating California Penal Code § 12020(a)(1), which prohibits, *inter alia*, the

---

[4] The BIA quoted the statutes in full but did not attempt to identify their elements.

possession of a billy club.[5]  The BIA did not find that the

---

[5] Specifically, § 12020(a)(1) punishes with a maximum of one year imprisonment any person who

> [m]anufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any cane gun or wallet gun, any undetectable firearm, any firearm which is not immediately recognizable as a firearm, any camouflaging firearm container, any ammunition which contains or consists of any flechette dart, any bullet containing or carrying an explosive agent, any ballistic knife, any multiburst trigger activator, any nunchaku, any short-barreled shotgun, any short-barreled rifle, any metal knuckles, any belt buckle knife, any leaded cane, any zip gun, any shuriken, any unconventional pistol, any lipstick case knife, any cane sword, any shobi-zue, any air gauge knife, any writing pen knife, any metal military practice handgrenade or metal replica handgrenade, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag.

Cal. Penal Code § 12020(a)(1) (2010).  This statute has since been repealed, and each of the unusual weapons is listed under a separate statutory section. *See* Cal. Penal Code  § 16590.  To convict a person of this crime, "the prosecution must prove that the item had the necessary characteristic to fall within the statutory description." *People v. King*, 38 Cal. 4th 617, 627 (2006).  In addition, "[a]lthough the language of section 12020(a)(1) does not specifically mention a culpable mental state," the California Supreme Court has held that the prosecution must show that the defendant had actual knowledge of the weapon's illegal characteristics. *Id.* at 622, 627.  No specific intent to use the weapon is required. *Id.* at 624; *People v. Rubalcava*, 23 Cal. 4th 322, 331 (2000) ("[T]he intent to use the concealed instrument as a stabbing instrument is *not* an element of the crime of carrying a concealed dirk or dagger" under California Penal Code § 12020(a)(1)); *People v. Fannin*, 91 Cal. App. 4th 1399, 1404 (2001) ("Intent to use a weapon is not an element of the crime

violation of § 12020(a)(1) alone constituted a crime involving moral turpitude. *See Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1072 (9th Cir. 2007) (en banc) ("No court has ever found possession of a weapon to be a crime involving moral turpitude."), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc), *abrogated by Descamps v. United States*, 133 S. Ct. 2276 (2013); *Matter of Serna*, 20 I. & N. Dec. 579, 584 (BIA 1992) ("[C]arrying or possessing a concealed weapon has been held to involve moral turpitude only when the intent to use it against another person has been established"), *modified on other grounds by Matter of Franklin*, 20 I. & N. Dec. 867 (1994); *Matter of Granados*, 16 I. & N. Dec. 726, 728–29 (BIA 1979) (holding that possession of sawed-off shotgun is not a crime involving moral turpitude), *abrogated by Matter of Wadud*, 19 I. & N. Dec. 182, 185 (BIA 1984). *See also United States v. Aguilera-Rios*, 754 F.3d 1105, 1116 (9th Cir. 2014) (in which the government conceded that a conviction under California Penal Code § 12021(c)(1), for anyone who "owns, purchases, receives, or has in possession or under custody or control, any firearm" within ten years of a prior conviction for certain misdemeanors, is not a crime of moral turpitude.).

Hernandez-Gonzalez also admitted, however, to an enhancement under California Penal Code § 186.22(b)(1). That provision states that an additional term of punishment

---

of weapon possession. Proof of possession alone is sufficient." (internal citation and quotation marks omitted)).

may be imposed[6] if (1) an individual is convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) if that felony was committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1). The requisite intent "applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." *Emery v. Clark*, 643 F.3d 1210, 1215 (9th Cir. 2011) (quoting *People v. Albillar*, 51 Cal. 4th 47, 66 (2010)) (internal citations and quotation marks omitted). Additionally, the specific intent need not be to "promote, further, or assist a *gang-related* crime" but only to "promote, further, or assist criminal conduct by *gang members*." *Id.* at 1215 n.3 (quoting *Albillar*, 51 Cal. 4th at 67 (internal quotation marks omitted)). The gang enhancement adds five years for a "serious felony," as defined in California Penal Code § 1192.7, ten years for a "violent felony," as defined in California Penal Code § 667.5, and two, three, or four years for all other felonies. Cal. Penal Code § 186.22(b)(1).

## B

### 1

With these elements of the weapons offense and the enhancement in mind, we turn to the second step of the analysis to determine whether Hernandez-Gonzalez's crime of conviction is categorically a crime of moral turpitude.

---

[6] The elements of the gang enhancement must be proved to the fact-finder beyond a reasonable doubt. *People v. Sengpadychith*, 26 Cal. 4th 316, 326 (2001).

Because the BIA's decision in this case is unpublished, and because the published BIA decisions it cites are not controlling, we give the BIA's decision in this case *Skidmore* deference. *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1210 (9th Cir. 2013). Under the *Skidmore* framework, we defer to an unpublished BIA decision "to the extent it has persuasive effect." *Id.* at 1211. The weight afforded to the decision "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140; *see also Castrijon-Garcia*, 704 F.3d at 1211.

The BIA decided here, in an unpublished decision, that "engaging in any of the conduct criminalized under California Penal Code § 12020(a)(1) for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members in violation of 186.22(b)(1), is categorically a crime involving moral turpitude." The BIA explained its reasoning as follows:

> Acting with the specific intent to promote, further, or assist in criminal gang activity is inherently base, vile, and depraved, and such activity is contrary to accepted rules of morality and duties owed to society in general. We are unaware of any application of § 186.22(b)(1) to conduct that does not involve moral turpitude, and have no reason to believe there exists a realistic probability that the statute would be so applied.

The BIA's reasoning is conclusory and simply echoes the agency's definition of moral turpitude. *See, e.g.*, *In re Torres-Varela*, 23 I. & N. Dec. 78, 83 (BIA 2001) ("We have held that moral turpitude refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general."). "This is no analysis at all." *Castrijon-Garcia*, 704 F.3d at 1211. It is also contrary to fact as in this very case § 186.22(b)(1) is being applied to conduct – unlawful possession of a weapon – that is widely held to be non-turpitudinous.[7] *Navarro-Lopez*, 503 F.3d at 1072; *Matter of Serna*, 20 I. & N. Dec. at 584; *Matter of Granados*, 16 I. & N. Dec. at 728–29. Thus, the BIA decision has little or no persuasive effect. "We therefore decline to grant deference to the unpublished BIA decision and determine *de novo* whether the elements of [the crimes of conviction] meet the generic definition of moral turpitude under immigration law." *Castrijon-Garcia*, 704 F.3d at 1211.

2

It is well settled in this Circuit that in determining whether a state crime of conviction constitutes a crime involving moral turpitude (CIMT), we apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *Ceron*, 747 F.3d at 780. "Under the categorical approach, we 'compare the elements of the crime to the generic definition of moral turpitude and decide whether the

---

[7] As noted, the gang enhancement statute may be triggered by criminal conduct consisting only of the predicate offense. *Emery*, 643 F.3d at 1215. The record of conviction in this case identifies no criminal conduct supporting application of the gang enhancement apart from the § 12020(a)(1) violation.

conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition.'" *Castrijon-Garcia*, 704 F.3d at 1212 (quoting *Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010)). "In order to hold that the statute of conviction is overbroad, we must determine that there is a 'realistic probability' of its application to conduct that falls beyond the scope of the generic federal offense." *Id.* (quoting *Nunez*, 594 F.3d at 1129).

"Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that (1) is vile, base, or depraved and (2) violates accepted moral standards." *Ceron*, 747 F.3d at 779–80 (internal quotation marks omitted). "Not all serious crimes meet this standard . . . . To be considered a crime of moral turpitude, a crime other than fraud must be more than serious; it must offend the most fundamental moral values of society, or as some would say, shock the public conscience." *Castrijon-Garcia*, 704 F.3d at 1212 (quoting *Navarro-Lopez*, 503 F.3d at 1074–75 (en banc) (Reinhardt, J., concurring for the majority) (internal citations, quotation marks, and alterations omitted)). This high standard is necessary to preserve the distinction between crime in general and crimes involving moral turpitude. As we explained in *Navarro-Lopez*,

> at some level all illegal acts violate societal norms and values—that is why the acts are illegal. However, "crimes involving moral turpitude" is a limited category of crimes and does not extend to cover all conduct that violates the law.

503 F.3d at 1073 n.9.  Thus, "[o]nly truly unconscionable conduct surpasses the threshold of moral turpitude." *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012).

"Crimes of moral turpitude generally involve some 'evil intent.'"  *Castrijon-Garcia*, 704 F.3d at 1213 (quoting *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010)). We recently reviewed our past cases analyzing whether particular offenses are crimes involving moral turpitude and found that "non-fraudulent crimes of moral turpitude generally involve an intent to injure, actual injury, or a protected class of victims."  *Id*.  We noted that neither aggravated assault, *Uppal v. Holder*, 605 F.3d 712, 719 (9th Cir. 2012), nor false imprisonment, *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010), is a crime of moral turpitude where the statute at issue lacks an intent to injure or harm or a special trust relationship.  *Castrijon-Garcia*, 704 F.3d at 1213.  Thus, in *Castrijon-Garcia*, we held that simple kidnaping under California Penal Code § 207(a) is not a crime of moral turpitude because it "does not require an intent to injure, actual injury, or a special class of victims."  *Id.*  Similarly, in *Turijan v. Holder*, 744 F.3d 617, 619 (9th Cir. 2014), we held that felony false imprisonment under California Penal Code § 237(a) is not categorically a crime of moral turpitude for the same reason.

The BIA did not conclude that § 12020(a)(1) alone constitutes a crime of moral turpitude.[8]  It said instead that when accompanied by a gang enhancement conviction, the weapons offense becomes a crime of moral turpitude.  The

---

[8] See, however, page 9 supra (collecting cases supporting the proposition that possession of a weapon without the intent to use it is not a crime involving moral turpitude).

gang enhancement statute, however, does not require an intent to injure, actual injury, or a protected class of victims. Nor does it require the use of any violence. Rather, the two elements of the gang enhancement are that the underlying felony at issue has been "committed for the benefit of, at the direction of, or in association with any criminal street gang," and that the felony has been committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1).

The BIA nonetheless concluded that possessing one of a lengthy list of weapons "for the benefit of, at the direction of, or in association with any criminal street gang" and "with the specific intent to promote, further, or assist in any criminal conduct by gang members" is categorically base, vile, or depraved. This was unquestionably an error. Weapons possession with a gang enhancement "need not involve grave acts of baseness or depravity" as defined in our case law. *Navarro-Lopez*, 503 F.3d at 1071. Although the gang enhancement statute has a specific intent element, it does not specify what type of "criminal conduct by gang members" a defendant must be intending to promote. Cal. Penal Code § 186.22(b)(1). The prosecution need not "establish specific crimes the defendant intended to assist his fellow gang members in committing," and, in fact, the criminal conduct the defendant intends to promote need not be "distinct from the charged offense." *Albillar*, 51 Cal. 4th at 66. There is nothing in the statute that would prevent it from applying to run-of-the-mill criminal conduct. Of course, all gang-related criminal conduct is, at some level, both serious and morally questionable, but not all gang-related criminal conduct necessarily involves grave acts of baseness or depravity.

Our review of California case law demonstrates that, quite to the contrary of the BIA's unsubstantiated assertion, there is much more than a "realistic probability" that the gang enhancement would be applied to conduct that does not involve moral turpitude. Section § 186.22(b)(1) is regularly applied to weapons possession convictions involving non-turpitudinous conduct. Frequently, the gang enhancement is imposed on weapons possession convictions in which the weapon was discovered in the context of probation or other searches arising from circumstances that involve no actual or intended injury. For instance, in *In re L.R.*, No. F059944, 2010 WL 3993715, at *1 (Cal. Ct. App. Oct. 13, 2010), an officer stopped a vehicle "after observing the front license plate hanging vertically from the vehicle." There were five people in the vehicle, and the officer observed "open alcohol beverage containers" and "gang paraphernalia" in the vehicle. *Id.* The appellant gave his consent to be searched, and the officer found a "large knife" in his right pocket. *Id.* The appellant admitted the weapon charge and pleaded no contest to the gang enhancement charge. *Id.*

Similarly, in *In re Michael M.*, No. G037302, 2007 WL 1169375, at *1 (Cal. Ct. App. Apr. 20, 2007), two police officers "spoke to four or five young men," including the minor defendant, who were known to be members of the Varrio Little Town street gang. An officer "asked [the] minor if he was carrying any weapons. Minor stated he had a bat, pointed to his pocket, and consented to a search. [The officer] found an aluminum bat with one end in minor's pocket and the other under his shirt." *Id.* The bat had gang-related etchings. *Id.* The minor agreed that "he had the bat because of other gangs," and stated that it was for protection. *Id.* He admitted that he had received the bat "from a friend that associated with Varrio Little Town." *Id.* The juvenile

court sustained allegations that he unlawfully possessed a deadly weapon under California Penal Code § 12020, and that he committed the offense for the benefit of a criminal street gang under § 186.22(b). *Id.*

In *People v. Nugent*, No. E051982, 2012 WL 1231065, at *1 (Cal. Ct. App. Apr. 12, 2012), the defendant's property was searched for an unspecified reason, and investigators discovered a nunchaku made from golf club handles, a billy club etched with the name of a gang, and a cane sword. The defendant was convicted of a violation of California Penal Code § 12020, with a gang enhancement, along with a charge of being an active gang participant under another subsection of § 186.22. *Id.* There were no allegations of other conduct beyond merely possessing the weapon for the benefit of the gang. The court of appeals held that there was sufficient evidence to support the gang enhancement because:

> Defendant had a tattoo only seen on full members of the gang, possessed gang paraphernalia, displayed affiliation with the gang while in jail, and was convicted of possessing illegal weapons of the kind used by the gang in its assaults. One of the three convictions was for a weapon inscribed with the name of the gang. Thus, the jury could reasonably infer that defendant was a full member of the gang and, as such, he possessed the weapons to benefit the gang by having them available for his or other members['] use in the gang's assaults or other criminal activity.

*Id.* at *3.

The sweeping scope of the California courts' conception of the intent to promote, further, or assist in criminal conduct by gang members is evident in *In re Jose G.*, No. F049539, 2006 WL 2424738, at *1 (Cal. Ct. App. Aug. 23, 2006). There, a California Court of Appeal affirmed the application of a gang enhancement to a minor's conviction for disturbance of the peace where, while filming a scene for his upcoming commercial DVD, he and other known gang members "shouted, barked and proudly expressed their allegiance to the Bulldog gang," "threw gang signs and yelled slogans associated with Bulldogs, as well as numerous expletives to rival gangs." *Id.* During the video, the minor wore numerous pieces of Bulldog clothing and carried a two-foot long axe. Because "this behavior clearly promoted the gang" through "enhanced recognition and status," and because the defendant assisted gang members in criminal conduct through his "orchestration of the scene and the resulting disturbance," the California Court of Appeal affirmed the gang enhancement conviction. *Id.* at *5.[9] Notably, the defendant was originally charged under § 12020(a)(1) with weapons possession, but he was not convicted on that count. *Id.* at *1–2.

In all of these cases, the defendant was found to have satisfied the gang enhancement statute's specific intent requirement based only on the underlying offense itself and the association with other gang members or the possession of gang paraphernalia. As the California Supreme Court has

---

[9] The minor was convicted under § 186.22(d), which unlike § 186.22(b) applies to convictions for a "public offense punishable as a felony *or a misdemeanor*" (emphasis added). *Robert L. v. Superior Court*, 30 Cal. 4th 894, 903 (2003) ("[S]ection 186.22(d) applies to all misdemeanors and all felonies.").

held, because the statute requires neither criminal conduct distinct from the charged offense nor that the defendant act with the specific intent to promote, further, or assist the gang itself rather than gang members, the simple act of "commit[ting] the charged felony with known members of a gang" is sufficient to satisfy the specific intent requirement under the statute. *Albillar*, 51 Cal. 4th at 67–68. In any event, "the bare presence of some degree of evil intent is not enough to convert a crime that is not serious into one of moral turpitude leading to deportation under [the INA]." *Rodriguez-Herrera v. INS*, 52 F.3d 238, 241 (9th Cir. 1995). The gang enhancement does not provide a sufficient "evil intent" to transform an otherwise non-turpitudinous crime into one involving moral turpitude. Stated differently, the *specific* intent required under the statute to further criminal conduct by gang members does not necessarily establish the *evil* intent required to make the offense turpitudinous.

The government argues that any crime becomes morally turpitudinous when a gang enhancement is applied, because "[t]he California Legislature believed that it needed to take steps to prevent this type of crime, and thus, as 'measured against contemporary moral standards,' the Board correctly held that a person convicted of a gang enhanced crime has committed a CIMT." In support of this argument, the government points to the legislative intent behind the California Street Terrorism and Prevention (STEP) Act, asserting that it shows that any act assisting gang members in their criminal conduct is morally turpitudinous. *See People v. Hernandez*, 33 Cal. 4th 1040, 1047 (2004) ("California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and

collectively, present a clear and present danger to the public order and safety and are not constitutionally protected." (quoting Cal. Penal Code § 186.21)).

This argument, however, mistakes criminality for moral turpitude, and lumps together all members of street gangs as equally culpable. The California Legislature's intent in enacting the law "only explains . . . why [the state would] choose to criminalize [conduct benefitting a gang] in the first place. It says nothing about whether [such conduct] is worse than any *other* crime—whether it is 'more than serious,' or whether it 'offends the most fundamental values of society.'" *Robles-Urrea*, 678 F.3d at 710 (alteration omitted) (emphasis in original) (quoting *Navarro-Lopez*, 503 F.3d at 1074–75 (Reinhardt, J. concurring for the majority)). The Legislature may choose to punish crimes it deems to be part of a pattern of gang criminality under its particular standards of proof, but this legislative determination does not suffice to transform a non-turpitudinous crime into a crime of moral turpitude by means of an enhanced sentence.

Because the intent element of the gang enhancement can be satisfied by an intent to assist gang members in any criminal conduct, whether turpitudinous or not, and even simply to assist them in the non-turpitudinous conduct that is the predicate offense, the gang enhancement statute is not directed solely at turpitudinous conduct. We do not minimize the often serious, antisocial and morally depraved aspects of gang-related crime committed with the specific intent of furthering criminal conduct by gang members. But we cannot say that such crimes categorically "involve grave acts of baseness or depravity." *Navarro-Lopez*, 503 F.3d at 1071. As we held with respect to Washington's burglary statute, "[b]ecause . . . an intent to commit *any* crime satisfies the

accompanying crime element of burglary, the offense encompasses conduct that falls outside the definition of a crime of moral turpitude." *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1019 (9th Cir. 2005), *abrogated on other grounds by Holder v. Martinez Gutierez*, 132 S. Ct. 2011 (2012).

Moreover, there is reason to believe that committing a felony with the intent to assist in non-specific criminal conduct by gang members may well be judged differently by society when considered from a moral rather than a criminal perspective, unlike crimes such as rape, murder, and incest. The vast body of social science literature on gangs shows that youths often join gangs for protection, or out of "fear of victimization at the hands of other gang members, community residents, or family members." Chris Melde & Terrence J. Taylor, *I Got Your Back: An Examination of the Protective Function of Gang Membership in Adolescence*, 47 Criminology 565, 566 (2009). In addition, gangs offer social structures lacking in certain disadvantaged communities. *Getting Out of Gangs, Staying Out of Gangs: Gang Intervention and Desistence Strategies*, Nat'l Gang Ctr. Bull., No. 8, Jan. 2013, at 1.

Such sociological facts in no way excuse the crimes committed by gang members, frequently against members of other gangs or even against their own members, but they do to some extent affect our moral judgment as to the nature and uniformity of their intent. Our task is to judge whether an intent to assist gang members in criminal activity in itself "offend[s] the most fundamental moral values of society." *Castrijon-Garcia*, 704 F.3d at 1212. We conclude that it does not. To conclude otherwise would require judging members of a social group as a whole rather than as individuals, an

approach that is particularly troubling here given the range of reasons motivating young people to associate with gangs.[10] In *Navarro-Lopez*, we recognized that "[t]he motivation underlying accessory crimes is often protection of a friend or of a family member during a time of trouble, and such actions, while criminal, do not necessarily evidence moral depravity." 503 F.3d at 1071. There is a similar gap between the criminal and moral judgment upon an intent to promote criminal activity by gang members. Under the statutory regime before us, whether a gang-enhanced crime is a crime of moral turpitude must be determined based on the underlying crime of conviction to which the enhancement is attached at sentencing, not on a classification of all gang-related crimes, no matter how minor, as morally turpitudinous. A crime that in itself involves no moral turpitude does not become turpitudinous merely by having been committed to promote, further, or assist criminal activity by gang members.

Allowing a gang enhancement to transform non-turpitudinous gang-related crimes into crimes of moral turpitude would amount to making California's penological judgment that sentences should be increased when felonies are gang-related into a nearly automatic sentence of deportation for a gang member who commits an ordinary felony. Such determinations are for the federal government, not the state, to make. *Arizona v. United States*, 132 S. Ct.

---

[10] In fact, the gang statute may be applied to individuals who are not even members of a gang. *Albillar*, 51 Cal. 4th at 67–68 ("Indeed, [application of § 186.22(b)(1)] does not depend on membership in a gang at all. Rather, it applies when a defendant has personally committed a gang-related felony with the specific intent to aid members of that gang.").

2492, 2498 (2012); *Graham v. Richardson*, 403 U.S. 365, 377–78 (1971).

Following completion of briefing and argument in this case, the BIA decided *Matter of E. E. Hernandez*, 26 I. & N. Dec. 397 (BIA 2014), in a published opinion.  In *Hernandez*, the respondent was convicted of maliciously defacing the property of another with graffiti or other inscribed material under California Penal Code § 594(a),[11] and admitted to a gang enhancement under Penal Code § 186.22(d).  *Id.* at 399.  Section 186.22(d) is nearly identical to § 186.22(b), except that, as previously noted, the former applies to both felonies and misdemeanors.[12]  Penal Code § 186.22(d); *Robert L.*,

---

[11] Section 594(a) provides, in pertinent part:

> "(a) Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism:

> (1) Defaces with graffiti or other inscribed material.

> (2) Damages.

> (3) Destroys."

[12] Section 186.22(d) provides:

> "Any person who is convicted of a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall be punished by imprisonment in a county jail not to exceed one

30 Cal. 4th at 903. In *Hernandez*, the BIA held that "malicious vandalism . . . committed for the benefit of a criminal street gang with the specific intent to promote criminal conduct by gang members" is categorically a crime involving moral turpitude. *Matter of E. E. Hernandez*, 26 I. & N. Dec. at 399–400.

The government seeks to rebut the conclusions we reach above by relying on *Hernandez*. Because *Hernandez* is a published decision, *Chevron* deference applies to the BIA's determination that the petitioner's conviction was for a CIMT. *Ceron*, 747 F.3d at 778; *Marmolejo-Campos v. Holder*, 558 F.3d 903, 910–11 (9th Cir. 2009) (en banc). Under *Chevron*, we defer to an agency's interpretation of ambiguous statutory language "so long as it is reasonable." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012 (9th Cir. 2006) (citing *Chevron*, 467 U.S. at 843).

Here, however, we do not defer to the BIA's conclusion in *Hernandez* that a gang enhancement can render a non-turpitudinous crime a CIMT.[13] In addition to the compelling reasons we have set forth above for rejecting such a

---

year, or by imprisonment in a state prison for one, two, or three years . . . ."

[13] *Hernandez* states that the predicate offense plus the enhancement constitute a CIMT but that it need not determine whether the predicate offense alone would constitute such a crime. Thus, it holds that whether or not the predicate offense constitutes a CIMT – in other words, even if the predicate offense is not a CIMT – the inclusion of the enhancement renders it one. *See* 26 I. & N. Dec. at 400 n.2.

conclusion as unreasonable,[14] we do not give deference to the BIA's statutory interpretation because the BIA failed to explain why the offense with the gang enhancement constituted conduct that is inherently base, vile or depraved as opposed to simply criminal conduct that society rejects, or conduct that the BIA concluded in *Hernandez* was "inherently reprehensible," 26 I. & N. Dec. at 402.[15]   In *Robles-Urrea*, we held that the BIA's conclusion in a precedential decision that misprision of a felony was a crime involving moral turpitude did not warrant deference under *Chevron*. 678 F.3d at 708–10. We determined that although the BIA properly recited the definition of a crime involving moral turpitude as one that is "inherently base, vile, or

---

[14] Although in the earlier part of our opinion we applied *Skidmore* rather than *Chevron* deference, we explained in no uncertain terms why it would be unreasonable to conclude that a gang enhancement could transform a non-turpitudinous offense into a CIMT.

[15] Although not the basis of our holding, we note that the BIA misstates the elements of the statute.  "[I]f the BIA errs at step one in determining the elements of the underlying crime, 'we owe its CIMT analysis at step two no deference." *Leal v. Holder*, 771 F.3d 1140, 1144 (9th Cir. 2014) (quoting *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1106 (9th Cir. 2011)). In its analysis of the statutory provisions, the BIA states that § 186.22(d) "require[s] that the underlying crime be committed with the specific intent to promote, further, or assist the criminal conduct of a *street gang*." *Matter of E. E. Hernandez*, 26 I. & N. Dec. at 401 (emphasis added). Elsewhere, it asserts that the statute "require[s] that the offender have committed a specific offense with the specific intent to advance *criminal gang conduct*." *Id.* (emphasis added).  The specific intent element, however, requires only that the defendant act "with the specific intent to promote, further, or assist in *any* criminal conduct by *gang members*." Cal. Penal Code § 186.22(b)(1), (d) (emphasis added).  Thus, the BIA's analysis did not properly consider the full scope of the statutory provisions, which would accordingly obviate any need to afford deference to the BIA's interpretation of the statute.

depraved' as well as contrary to the accepted rules of morality and the duties owed between persons or to society in general,'" it failed to explain why misprision of a felony satisfied this definition. *Id.* at 708. Specifically, we held that the BIA's reasoning that misprision of a felony must be morally turpitudinous because it involves "both knowledge of a crime and some affirmative act of concealment or participation,' and such 'behavior . . . runs contrary to accepted social duties,'" *id.* at 709 (alteration in original) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 696 n.36 (1972)), failed to explain why the crime fit this definition such that it "'involve[d] some level of depravity or baseness 'so far contrary to the moral law' that it gives rise to moral outrage,'" *id.* at 709 (quoting *Navarro-Lopez*, 503 F.3d at 1071). Stated differently, the BIA explained that misprision of felony is wrong, but not why it is morally turpitudinous. *See id.* ("[T]he 'commission of any crime, by definition, runs contrary to some duty owed to society. If this were the sole benchmark for a crime involving moral turpitude, every crime would involve moral turpitude.'" (quoting *Navarro-Lopez*, 503 F.3d at 1070–71)).

The identical lack of reasoning by the BIA exists in *Hernandez*. The BIA notes that "[c]riminal gangs pose a serious danger to public safety and have a taxing burden on society and our moral culture," and that the California Legislature enacted the STEP Act for the purpose of eradicating criminal activity by street gangs. *Matter of E. E. Hernandez*, 26 I. & N. Dec. at 400. Like the reasons offered in *Robles-Urrea*, however, these reasons do not warrant deference because they mistake mere criminality for moral turpitude and fail to explain why this crime in particular constitutes a CIMT. *See* 678 F.3d at 709. Where, as in *Hernandez*, the BIA simply states that criminal conduct is

morally turpitudinous but fails to provide a reasoned foundation for its conclusion, its "analysis is an impermissible construction of the INA, and we decline to defer to it." *Id.* at 709–10. Accordingly, we conclude that to the extent the BIA's holding in *Hernandez* – that the respondent's conviction is categorically one involving moral turpitude – is based on the application of the gang enhancement statute, it is unreasonable, and we need not defer to it. *See Chevron*, 467 U.S. at 842–45.

*Hernandez* fares no better on *de novo* review. Contrary to the BIA's assertion, *Matter of E. E. Hernandez*, 26 I. & N. Dec. at 402, there is a "realistic probability, not just a theoretical possibility," *Castrijon-Garcia*, 704 F.3d at 1215 (alteration omitted), that California applies § 186.22(d) to conduct that does not involve moral turpitude. *See*, *e.g.*, *In re Jose G.*, 2006 WL 2424738 (disturbance of the peace); *People v. Rodriguez*, No. B247514, 2014 WL 2610612 (Cal. Ct. App. June 12, 2014) (same); *In re Juan L.*, No. F067588, 2014 WL 1394623 (Cal. Ct. App. Apr. 10, 2014) (possession of a box cutter on school grounds); *People v. Davis*, No. E061071, 2014 WL 4731500 (Cal. Ct. App. Sept. 23, 2014) (simple battery);[16] *People v. Hernandez*, No. G049024, 2014 WL 4373198 (Cal. Ct. App. Sept. 4, 2014) (vandalism causing less than $400 in damages).

We reiterate: a crime that in itself does not involve moral turpitude does not become turpitudinous merely because it

---

[16] This Court and the BIA have both held that simple battery is not categorically a crime involving moral turpitude. *Nunez v. Holder*, 594 F.3d 1124, 1137 (9th Cir. 2010) ("Both our court and the BIA have repeatedly held that simple assault and battery are not categorically crimes of moral turpitude.").

was committed to promote, further, or assist criminal activity by gang members. Thus, *Hernandez* does not affect our holding that the BIA's conclusion in the instant case was in error.

Because the offense of weapons possession with a gang enhancement has none of the characteristics of moral turpitude we have identified, and because California cases "demonstrate that there is a realistic probability, not just a theoretical possibility" that California does in fact apply the gang enhancement to conduct that does not involve moral turpitude, *Castrijon-Garcia*, 704 F.3d at 1215 (alteration and internal quotation marks omitted), we hold that Hernandez-Gonzalez's sentence enhancement under California Penal Code § 186.22(b)(1) does not categorically elevate a crime to a crime involving moral turpitude.[17] In short, a conviction under California's gang enhancement statute does not change the CIMT status of the predicate offense.

---

[17] Because we conclude that a gang enhancement cannot transform a non-turpitudinous crime into a turpitudinous crime, the modified categorical approach plays no role in this case. Even if § 186.22(b)(1) were divisible, thereby making the modified categorical approach applicable to the multiple crimes contained in the statute, *see Descamps*, 133 S. Ct. at 2285, a question we do not decide, it would not matter because none of those crimes would qualify as a turpitudinous offense. *See Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) ("[W]e may use the modified categorical approach so long as one of the crimes included in the statute is a categorical match for the federal generic offense."). We conclude, therefore, that, contrary to the suggestion made by the government, remand to the BIA on this question is unnecessary.

III

We hold that application of the gang enhancement provision under § 186.22(b)(1) does not render Hernandez-Gonzalez's conviction for weapons possession under California Penal Code § 12020 a crime of moral turpitude. The petition is GRANTED. Because the BIA did not rule on the other two grounds of removability – that the gang-enhanced weapons possession charge is a crime of violence under 8 U.S.C. § 1101(a)(43)(F), and that the failure to appear for a controlled substances charge constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(T) – we REMAND for the agency to make the first determination on those charges.

**GRANTED AND REMANDED.**