**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1314**

MELVIN JOSUE RODRIGUEZ CABRERA,

            Petitioner,

      v.

WILLIAM P. BARR, Attorney General,

            Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 9, 2019                                      Decided: July 19, 2019

Before MOTZ, AGEE and HARRIS, Circuit Judges.

Petition for review granted; vacated and remanded with instructions by published opinion. Judge Agee wrote the opinion, in which Judge Motz and Judge Harris joined.

**ARGUED:** Teresa Rubinger, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Victoria Marie Braga, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Erica Hashimoto, Diretor, Anjali Parekh Prakash, Supervising Attorney, Elijah Staggers, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Joseph H. Hunt, Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

AGEE, Circuit Judge:

Melvin Josue Rodriguez Cabrera, a native and citizen of El Salvador, became a lawful permanent resident of the United States in 2014. Three years later, the Department of Homeland Security ("DHS") initiated removal proceedings against him based on his 2017 Virginia conviction under Va. Code § 18.2-46.2 for participation in a criminal street gang. The immigration judge ("IJ") determined that this Virginia offense did not categorically constitute a crime involving moral turpitude and thus could not be a basis for removing Cabrera. DHS appealed, and the Board of Immigration Appeals ("BIA") issued a decision holding that a Virginia conviction for participation in a criminal street gang categorically constitutes a crime involving moral turpitude. The BIA reinstated removal proceedings against Cabrera and remanded to the IJ for a determination on the other statutory requirements for removal. After the IJ determined that those other elements were met and ordered Cabrera's removal, he filed a petition for review directly in this Court. We conclude, first, that we have jurisdiction over Cabrera's petition because he has exhausted his administrative remedies, and second, that the Virginia offense of participating in criminal street gang activity is not categorically a crime involving moral turpitude. We therefore grant Cabrera's petition for review, vacate the order of removal, and remand with instructions.

I.

The Virginia statute prohibiting participation in a criminal street gang states, in relevant part:

> Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony.

Va. Code § 18.2-46.2(A). *See generally* Va. Code § 18.2-10(e) (authorizing punishment for a Class 5 felony of "a term of imprisonment of not less than one year nor more than 10 years").

In 2017, Cabrera pleaded guilty to a violation of this statute, for which he was sentenced to a suspended term of imprisonment of five years. Thereafter, DHS served Cabrera with a Notice to Appear before an IJ for removal proceedings initiated under section 212(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1227(a)(2)(A)(i), which authorizes the removal of an alien who has been convicted for a crime involving moral turpitude committed within five years of admission and for which a term of imprisonment of one year or longer could be imposed. DHS asserted that Va. Code § 18.2-46.2's offense is categorically a crime "involving moral turpitude," which is defined as a crime that "not only violates a statute but also independently violates a moral norm." *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 294 (4th Cir. 2018).

The IJ terminated removal proceedings after concluding that Cabrera's conviction was not for a crime involving moral turpitude. DHS successfully appealed this decision to the BIA, which held that when an offense is committed "in association with a gang, the reprehensibility of that act can no longer be viewed in isolation; its inherent moral character is changed—and aggravated—by its gang related nature." A.R. 21. The BIA

3

further explained that Va. Code § 18.2-46.2's requirement that the underlying offense be committed "in association with" a gang meant, at a minimum, that the act was committed with "*conscious* affiliation, not mere accidental correlation" to a gang, and thus ensured that the act was also committed with the requisite morally reprehensible state of mind to constitute a crime involving moral turpitude. A.R. 21. The BIA reinstated the proceedings against Cabrera and remanded his case to the IJ for a determination of whether Cabrera's conviction satisfied the other requirements for removability under 8 U.S.C. § 1227(a)(2)(A)(i).

The IJ entered an order of removal after determining that the other statutory requirements were met. That order indicates that Cabrera affirmatively waived his right to appeal the IJ's decision to the BIA, making the IJ's order a final order of removal. *See generally* 8 C.F.R. § 1241.1(b) (stating that an IJ's order of removal "shall become final" "[u]pon waiver of appeal by the respondent").

Cabrera filed a timely petition for review that raised one issue: whether the BIA erred in determining that the gang-related offense prohibited under Va. Code § 18.2-46.2 categorically qualifies as a crime involving moral turpitude.

II.

Before reaching the merits of Cabrera's petition, we must address our jurisdiction over this case. By statute, we have jurisdiction over final orders of removal "only if" "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Because Congress wrote the exhaustion requirement into the

4

jurisdictional grant to the Court for the review of removal orders, the Court lacks jurisdiction to consider petitions for review when an alien has not exhausted his administrative remedies. *Massis v. Mukasey*, 549 F.3d 631, 638 (4th Cir. 2008) ("We have previously interpreted [8 U.S.C. § 1252(d)(1)] as a jurisdictional bar."); *cf. Kporlor v. Holder,* 597 F.3d 222, 226–27 (4th Cir. 2010) ("The exhaustion doctrine embodies a policy of respect for administrative agencies, which allows them to carry out their responsibilities and to discover and correct their own errors."). That said, no statute defines what constitutes "exhaustion" for purposes of § 1252(d)(1).

Our case law informs the analysis of when administrative exhaustion has occurred, but the precise question raised in this case is an issue of first impression in this Circuit: was Cabrera required to appeal the IJ's order of removal to the BIA before filing his petition for review with this Court in order to exhaust his administrative remedies? That question is presented within the additional context that the sole issue raised in Cabrera's petition relates to a legal question the BIA conclusively decided earlier in his removal proceeding.

Ordinarily, a petitioner exhausts his administrative remedies by raising an argument challenging the IJ's decision in an appeal to the BIA. *E.g.*, *Kporlor*, 597 F.3d at 226 ("It is well established that an alien must raise each argument to the BIA before we have jurisdiction to consider it."). Consequently, arguments that a petitioner did not raise in the BIA proceedings have not been exhausted and the Court lacks jurisdiction to consider them. *Asika v. Ashcroft*, 362 F.3d 264, 267 n.3 (4th Cir. 2004) ("We have no jurisdiction to consider this argument, however, because [the petitioner] failed to make it

5

before the [BIA] and, therefore, failed to exhaust all administrative remedies."). Only after the BIA has rendered a decision on an argument or claim is that argument or claim said to have been exhausted. *See Lizama v. Holder*, 629 F.3d 440, 448–49 (4th Cir. 2011) (holding that an alien exhausted remedies by raising a claim in his notice of appeal to the BIA—even if he neglects to brief the issue—if the BIA has nonetheless addressed the issue in its decision). In sum, we have consistently held that when the BIA has never been part of a petitioner's removal proceedings we lack jurisdiction to consider the petition for review and when a petition contains an argument that has never been presented to the BIA for consideration, we lack jurisdiction to consider it even if other arguments in the petition have been exhausted.

Relying on these principles, DHS contends that Cabrera did not exhaust his administrative remedies because he had the right to appeal the IJ's removal order to the BIA, but he chose to waive that right. DHS argues that the BIA must first determine whether Cabrera's removal was proper before this Court can consider Cabrera's petition for review and that his decision not to appeal directly to the BIA deprived the BIA of the opportunity to do so. In addition, DHS asserts that the BIA's earlier decision concerning Cabrera's Virginia conviction did not relieve him of his obligation to appeal the removal order to the BIA because there is no futility exception to the exhaustion requirement.

Relying on the same principles, Cabrera responds that he has exhausted his administrative remedies because the BIA definitively ruled in the earlier appeal that his Virginia conviction is for a crime involving moral turpitude and that ruling is the sole issue he raises in his petition for review. He observes that although this Court has not

6

decided whether administrative remedies have been exhausted in these circumstances, three circuit courts of appeals have considered it and have unanimously held in favor of finding exhaustion. Our sister circuits have determined that a petitioner has exhausted his administrative remedies when the BIA conclusively determined the issue(s) for which a petitioner seeks review even though the BIA's review occurred before a remand to the IJ and even though the petitioner did not appeal the IJ's removal order to the BIA before filing a petition for review directly with the court of appeals. *See Shepherd v. Holder*, 678 F.3d 1171, 1176–78 (10th Cir. 2012); *Popal v. Gonzales*, 416 F.3d 249, 252–53 (3d Cir. 2005); *Perkovic v. I.N.S.*, 33 F.3d 615, 619–20 (6th Cir. 1994).[1]

---

[1] DHS relies on various nuances between these cases and Cabrera's in an effort to distinguish them. We conclude that these differences are immaterial to the exhaustion analysis and present sufficiently similar circumstances to the posture of Cabrera's case to be analogous and persuasive. We need not recount the underlying facts at length given that this case turns on the underlying legal principles.

Briefly, though, in *Shepherd*, the IJ had initially dismissed the removal proceedings against the petitioner based on collateral estoppel, the government successfully "appealed to the BIA, which reversed the IJ's collateral estoppel ruling," and "remanded for further proceedings and the entry of a new decision." 678 F.3d at 1176. The IJ then entered a final order of removal and the petitioner filed her petition for review without first appealing that decision to the BIA. *Id*. The Tenth Circuit held that she had exhausted her administrative remedies to challenge the collateral estoppel issue in federal court because "exhaustion does not require repeated presentations of issues already finally resolved" and two circuit courts had also "disavow[ed] the need for redundant appeals to the BIA." *Id.* at 1178.

In *Popal*, the IJ had initially terminated removal proceedings against the petitioner after concluding that the state offense relied on to initiate the proceedings did not qualify as a crime of violence. 416 F.3d at 251. "DHS appealed [that decision] to the BIA, which reversed," and held that the petitioner was eligible for removal. *Id*. The BIA then remanded "to allow [the petitioner] to apply for any relief from removal for which he may be eligible." *Id*. The petitioner declined the opportunity to apply for any other relief, (Continued)

We agree with Cabrera—and our sister circuits—that a petitioner has exhausted his administrative remedies when the BIA has issued a definitive ruling on the issue raised in the petition for review, even though the BIA ruling came before the IJ's entry of an order of removal and even though the petitioner did not appeal that order to the BIA before filing the petition for review. This conclusion follows from applying several principles related to the exhaustion requirement.

First, the exhaustion requirement "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Kurfees v. I.N.S.*, 275 F.3d 332, 336 (4th Cir. 2001); *accord Kporlor*, 597 F.3d at 226–27. Both objectives are

the IJ ordered the petitioner removed, and the petitioner filed his petition for review without appealing the removal order to the BIA first. *Id.* The Third Circuit held that the petitioner exhausted his administrative remedies because the IJ's decision "made no new findings of fact or conclusions of law, and considered no issues that had not been decided by the BIA," and instead simply "implemented the BIA's decision." *Id.* at 253. The court observed that "the purposes of exhaustion would [not] be served by a further appeal to the BIA" given that "[t]here are no factual allegations or legal arguments before us that were not raised before the BIA." *Id.*

In *Perkovic*, the IJ had initially determined "that the petitioners should be granted asylum," and "INS appealed the decision" to the BIA, which "reversed the [IJ's] decision and remanded the case" after determining that they were ineligible for asylum. 33 F.3d at 618. The IJ then entered a final order of removal after allowing the petitioners to select their destination country and granting voluntary departure, which the petitioners appealed to the Sixth Circuit without first seeking the BIA's review. *Id.* at 618–19. The Sixth Circuit held that the petitioners had exhausted their administrative remedies as to their eligibility for asylum "because [that issue was] presented to the immigration judge and then to the Board, which definitively resolved the claims on their merits." *Id.* at 619. The court further observed that it would be "pointless to interpret the exhaustion rule as requiring that . . . uncontested matters be presented to the Board before" the final removal order "can be considered by this court." *Id.* at 620.

served when, as is the case before us, the BIA has exercised its authority by issuing a conclusive ruling on a particular issue in the petitioner's agency proceedings and the Court knows the agency's final adjudication of the issue in the petitioner's case. Conversely, none of the traditional principles favoring exhaustion would be served by requiring a second appeal to the BIA after the IJ's final entry of the removal order when the petitioner does not challenge the decisions made in that order. *See Popal*, 416 F.3d at 253 ("The issues have been fairly presented to, and fully adjudicated by, the BIA. There are no factual allegations or legal arguments before us that were not raised before the BIA. Judicial economy would not be served by requiring [the petitioner] to take a second, essentially frivolous appeal to the BIA raising the same issues that the Board had already rejected in [his] own case.").

Second, the exhaustion requirement is consistently described in terms of substance rather than timing. The significant inquiry is *that* the BIA has definitively ruled on the petitioner's argument in adjudicating his case, not *when* it has done so. *Kporlor*, 597 F.3d at 226 ("It is well established that an alien must raise each argument to the BIA *before* we have jurisdiction to consider it." (emphasis added)); *see Telyatitskiy v. Holder*, 628 F.3d 628, 631 (1st Cir. 2011) (considering both the petitioner's BIA appeal and motion to reconsider to determine whether the petitioner had raised the argument made in his petition for review and thus exhausted his administrative remedies as to that argument); *cf. Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (observing that "an alien must present the *same specific legal theory* to the BIA before he or she may

9

advance it in [this] court"). Here, the BIA has definitively addressed the argument Cabrera makes in his petition.

Third, the exhaustion requirement is satisfied when the BIA has definitively spoken on a particular issue in the petitioner's case one time. Petitioners need not file a motion to reconsider the same argument the BIA has already rejected in order to exhaust their remedies. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (describing the exhaustion requirement in the context of habeas corpus as "properly present[ing] his or her claims through *one complete round* of the . . . established appellate review process" (emphasis added)); *Shepherd*, 678 F.3d at 1177; *see also Parlak v. Holder*, 578 F.3d 457, 463 (6th Cir. 2009) (observing that, "as a general rule," petitioners do not have to file a motion to reconsider with the BIA to exhaust administrative remedies as to an argument the BIA has already rejected); *Toledo-Hernandez v. Mukasey*, 521 F.3d 332, 336 (5th Cir. 2008) ("In cases where the BIA has previously ruled on an issue, we do not hold that in order to exhaust their administrative remedies for purposes of invoking federal court jurisdiction that petitioners must file a motion to reopen in order to have the agency reconsider the same issue."); *Padilla v. Gonzales*, 470 F.3d 1209, 1214 (7th Cir. 2006) ("[I]n the typical case an alien will first present his arguments to the BIA, and if the BIA orders his removal after considering those arguments, the alien need not ask the BIA to reconsider its decision before he may petition a court for review."). Requiring Cabrera to appeal the IJ's removal order to the BIA as a mandatory prerequisite to challenge in the court of appeals the BIA's prior decision that his conviction was for a crime involving moral turpitude "would [be] the functional equivalent of" requiring him to move to reconsider

10

before filing a petition for review. *Perkovic*, 33 F.3d at 620. It is therefore just as unnecessary.

Lastly, exercising jurisdiction under the circumstances presented in this case does not—as DHS contends—amount to allowing a petitioner to avoid the exhaustion requirement based on general futility. Generally speaking, a petitioner must raise his arguments before the BIA even when he is almost assuredly not going to prevail, such as when the BIA has rejected the argument in a different case or binding precedent forecloses it from adopting his position. *See Popal*, 416 F.3d at 252–53 ("[T]he exhaustion requirement of 8 U.S.C. § 1252(d) is jurisdictional, and . . . there is no general futility exception. Indeed, the fact that the BIA has considered and rejected the petitioner's argument in *another* case will not normally excuse [his] failure to raise it in his own appeal to the BIA. An alien must exhaust all administrative remedies available to him, even if he reasonably predicts that these remedies are unlikely to do him any good.").[2] Although a limited exception for "futility" exists in other contexts where exhaustion of administrative remedies is required, *e.g.*, *Ham v. North Carolina*, 471 F.2d 406, 407 (4th Cir. 1973), the Supreme Court has held that such exceptions are not appropriately "read . . . into statutory exhaustion requirements" unless Congress has provided for them, *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) (stating courts have "no authority to create equitable

---

[2] We have omitted any internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

exceptions to jurisdictional requirements"); *Massis*, 549 F.3d at 640 (declining to read a "miscarriage of justice" exception into § 1252(d)'s exhaustion requirement in light of *Bowles*'s instruction and observing that "[s]ince *Bowles*, courts of appeals have declined to entertain equitable exceptions to section 1252(d)'s administrative exhaustion requirement"). Our conclusion in this case is grounded on Cabrera having exhausted his administrative remedies, not on his being excused from this requirement. The record demonstrates that the BIA considered and rejected the argument Cabrera has raised in his petition for review in Cabrera's own administrative proceedings. The BIA's dispositive ruling—not futility—is the basis for concluding we have jurisdiction over his petition for review. *See Popal*, 416 F.3d at 253 (holding the same).

In short, we hold that Cabrera was not required to appeal the IJ's removal order to the BIA before filing his petition for review challenging the BIA's determination that his conviction was for an offense that is categorically a crime involving moral turpitude. The BIA definitively ruled on the argument Cabrera is now challenging in his petition before it remanded his removal proceedings to the IJ for other factual findings that did not disturb or affect the BIA's decision on this issue. As such, Cabrera has exhausted his administrative remedies, and we have jurisdiction to consider his petition for review.


III.

Turning to the substance of the petition for review, Cabrera poses a straightforward question of law: did the BIA err in holding that a conviction for violating

12

Va. Code § 18.2-46.2 categorically qualifies as a crime involving moral turpitude for purposes of 8 U.S.C. § 1227(a)(2)(A)(i)?

A.

In resolving this issue, we defer to the BIA's determination only to the extent that we find its reasoning persuasive. This is so for two reasons: first, the Court does not defer to the BIA's determination that a state statute categorically involves moral turpitude because that is a question outside the BIA's authority and expertise. *Ramirez v. Sessions*, 887 F.3d 693, 702 (4th Cir. 2018). To the extent the BIA's decision rests on an interpretation of Va. Code § 18.2-46.2, the Court's review is de novo. *See Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017). Second, because the BIA issued a one-member decision in Cabrera's case, the decision is non-precedential and "categorically ineligible for *Chevron*"[3] deference. *Ramirez*, 887 F.3d at 702. "In the absence of *Chevron* deference, the weight given to a BIA decision 'hinges on the thoroughness evident in the BIA's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade.'" *Id.* at 703 (alteration in original) (describing *Skidmore*[4] deference).

Here, in issuing a non-precedential, one-member decision concluding that the offense punishable under Va. Code § 18.2-46.2 categorically is a crime involving moral turpitude, the BIA relied principally on its precedential decision, *Matter of E.E.*

---

[3] *Chevron, U.S.A., Inc. v. Nat'l Res. Defen. Council, Inc.*, 467 U.S. 837 (1984).

[4] *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

*Hernandez*, 26 I. & N. Dec. 397 (B.I.A. 2014). That case held that the California Penal Code's enhancement for gang-related offenses transformed crimes that were not otherwise morally turpitudinous into ones that were. A.R. 19; *see also id.* at 397. Referencing *E.E. Hernandez*, the BIA pointed to the "moral depravity of criminal street gangs" and observed that Va. Code § 18.2-46.2 "does not criminalize mere gang membership, nor does it cover offenses in which the gang affiliation of the accused was incidental to the commission of the underlying offense." From that premise, it concluded that the combination of a "predicate criminal act" and "the aggravating circumstances which make it a *gang-related* violation" caused Va. Code § 18.2-46.2 to necessarily involve moral turpitude. A.R. 20–21. In addition, the BIA determined that the requirement in Va. Code § 18.2-46.2 that the defendant acted, at a minimum, "in association with" a gang provided the requisite level of mental culpability to be a crime involving moral turpitude. A.R. 21–22. At its core, the BIA's decision rested on the premise that acts that are not morally turpitudinous in themselves necessarily become so "when committed 'in association with' a gang by an active gang participant." A.R. 22.

For the reasons set out below, we conclude that the reasoning in the BIA's decision is not persuasive; therefore, we do not afford it *Skidmore* deference.

B.

"[G]enerally, a crime involves moral turpitude if it is 'inherently base, vile, or depraved and contrary to accepted rules of morality and the duties owed between persons or to society in general.'" *Prudencio v. Holder*, 669 F.3d 472, 484–85 (4th Cir. 2012). (quoting *Matter of Olquin-Rufino*, 23 I. & N. Dec. 896, 896 (B.I.A. 2006)); *see also*

14

*Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014) ("[W]e have noted that 'moral turpitude' refers generally to 'conduct that shocks the public conscience as being inherently base, vile, or depraved.'" (quoting *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001)). A criminal statute must require two things in order to satisfy this definition: "'a culpable mental state and reprehensible conduct.'" *Sotnikau v. Lynch*, 846 F.3d 731, 736 (4th Cir. 2017) (quoting *Matter of Ortega-Lopez*, 26 I. & N. Dec. 99, 100 (B.I.A. 2013)).

When undertaking this review, the Court uses the categorical approach, looking to the elements of the crime rather than the particular circumstances of the petitioner's violation. *Prudencio*, 669 F.3d at 484. Under this approach, a crime does not involve moral turpitude if there is a "realistic probability" that the statute of conviction could "be applied to reach conduct that does not involve moral turpitude." *Matter of Louissant*, 24 I. & N. Dec. 754, 757 (B.I.A. 2009). Put another way, "[i]f all permutations of the conduct proscribed by the elements of the offense involve moral turpitude, then the offense categorically qualifies as" one involving moral turpitude. *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018).[5]

---

[5] In the agency proceedings, both DHS and Cabrera based their arguments on the categorical approach. On appeal, DHS contends for the first time that if the Court concludes Va. Code § 18.2-46.2 is not categorically a crime involving moral turpitude, then we should consider in the first instance whether the modified categorical approach should be used or, in the alternative, remand for the BIA to undertake that initial review. DHS Br. 40–41 n.9.

The modified categorical approach "applies in cases involving 'divisible' statutes," meaning statutes that "set[] out alternate elements that create multiple forms of (Continued)

15

Several aspects of Va. Code § 18.2-46.2 are undisputed. It has three elements:

> First, a person must actively participate in or be a member of a criminal street gang. Second, the person must knowingly and willfully participate in a predicate criminal act. Third, the act must be committed for the benefit of, at the direction of, or in association with the gang.

*Hamilton v. Commonwealth*, 688 S.E.2d 168, 177 (Va. 2010).[6] Further, the second

element cannot form the basis for the conclusion that the offense involves moral turpitude

because, as DHS concedes, this element's "predicate criminal act" encompasses offenses

that the BIA and this Court have determined are not crimes involving moral turpitude for

immigration purposes. DHS Br. 15; *compare Parada v. Commonwealth*, No. 0572-07-4,

---

the criminal offense and at least one form of the offense qualifies—by its elements—as the generic predicate offense." *Martinez*, 892 F.3d at 659. But "[a] statute that lists alternative *means* of committing a single offense, rather than alternative *elements*, is not divisible." *Id.*

The modified categorical approach cannot be used to analyze Va. Code § 18.2-46.2 because the statute is not divisible. As discussed above, the statute contains three elements, with two elements listing alternative *means* of satisfying that element. We therefore confine our analysis to whether the proscribed offense is categorically a crime involving moral turpitude.

[6] Virginia law defines "criminal street gang" to mean

> any ongoing organization, association, or group of three or more persons, whether formal or informal, (i) which has as one of its primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.

Va. Code § 18.2-46.1.

2008 WL 2497334, at *1 (Va. Ct. App. June 24, 2008) (holding that Virginia's assault and battery statute can be a predicate criminal act for purposes of Va. Code § 18.2-46.2), *with Matter of Jing Wu*, 27 I. & N. Dec. 8, 10–11 (B.I.A. 2017) (holding that Virginia's assault and battery statute is not a crime involving moral turpitude). As a consequence, for this offense to involve moral turpitude, the conduct proscribed by the first or third elements of the statute must encompass moral turpitude. And because the categorical approach requires us to "presume that the prior conviction rested upon nothing more than the least of the acts criminalized and then determine whether even those acts are encompassed by" the statute, we focus on "the minimum conduct criminalized by the statute of conviction." *Mena v. Lynch*, 820 F.3d 114, 117 (4th Cir. 2016); *accord Martinez*, 892 F.3d at 664.

Turning to the first element of Va. Code § 18.2-46.2, the Supreme Court of Virginia has recognized that this element requires proof of "*either* membership *or* participation" in a criminal street gang. *Hamilton*, 688 S.E.2d at 177 (emphasis added); *accord Rushing v. Commonwealth*, 726 S.E.2d 333, 338 (Va. 2012) ("A defendant charged with gang participation, although not an actual member of the gang, may be convicted upon a showing that he participated in a gang-related crime."). Of these two means of satisfying the element, active participation in the gang would be the lesser conduct. Virginia courts have held, for example, that a defendant's choice to wear a red hat and shirt to a party where other Bloods wearing red clothing were also present and where the defendant told a third party dressed in red, "You're a Blood and you don't even

17

know it," was sufficient evidence of "participation" to satisfy this element. *Hamilton*, 688 S.E.2d at 177.

Similarly, the third element—that the predicate criminal act was "committed for the benefit of, at the direction of, or in association with the gang"—can be committed in any one of these three disjunctive ways. *See Morris v. Commonwealth*, 716 S.E.2d 139, 141 (Va. Ct. App. 2011) ("[U]nder the plain language of Code § 18.2-46.2(A), the Commonwealth . . . was required to prove that the predicate criminal act appellant participated in with the . . . gang was committed 'for the benefit of' *or* 'at the direction of' *or* 'in association with' the . . . gang."). Of the three, "in association with" appears to be the lowest threshold for satisfying the element. Virginia courts have held that this component of the statute requires proof only that the defendant shared an intent to commit the predicate criminal act, and it "does not expressly require that the defendant ha[d] the same, specific objective" as the gang for committing that act. *Id.* at 141. Thus, for example, the Court of Appeals of Virginia held that sufficient evidence existed to show that the defendant committed the predicate act "in association with" a gang where he "associated himself with [gang] members in order to attack innocent individuals" and "shared the same general objective as the . . . gang members" by "join[ing] in the" predicate criminal act. *Id.* at 141–42. It rejected the defendant's argument that the Commonwealth had to demonstrate that he had the same specific reason for participating in the attack as the participating gang members, *i.e.*, "achieving rank within the criminal street gang." *Id.* at 141.

18

Having earlier concluded that the second element of the statute cannot provide the requisite combination of "a culpable mental state and reprehensible conduct" to make Va. Code § 18.2-46.2 categorically qualify as a crime involving moral turpitude, we reach the same conclusion as to elements one and three. Contrary to the BIA's conclusion, the mere fact that an act was committed "in association with" a gang by someone who "actively participate[d] in" the gang does not necessarily involve moral turpitude. To hold otherwise would allow a statute to be classified as involving depraved conduct based on a characteristic unrelated to that conduct, whether it be the defendant's identity or that of the individuals with whom he acted. The fact that the defendant or his associates may have committed *other* morally depraved conduct that would satisfy the gang-related elements of Va. Code § 18.2-46.2 has no nexus to the predicate criminal act of conviction to recast it into a crime involving moral turpitude for purposes of the INA. And in enacting 8 U.S.C. § 1227(a)(2)(A)(i), Congress required DHS to prove just that: to be removable under this provision, the alien must have been "*convicted of a crime* involving moral turpitude." (Emphasis added.)

The following example illustrates our conclusion that a conviction under Va. Code § 18.2-46.2 does not categorically qualify as a crime involving moral turpitude. A predicate criminal act under Va. Code § 18.2-46.2 includes violating Va. Code § 18.2-128—trespass upon church or school property. *See* Va. Code § 18.2-46.1 (listing a violation of Va. Code § 18.2-128 among the potential predicate criminal acts for purposes of Va. Code § 18.2-46.2). Virginia law generally classifies that crime as a Class 3 misdemeanor, Va. Code § 18.2-128(A), meaning that the maximum punishment for its

19

violation is a "fine of not more than $500," Va. Code § 18.2-11(c). No one contends that a simple trespass upon church property is a crime involving moral turpitude. Yet, under the DHS framework, if two active participants in a criminal street gang (first element: "actively participates in . . . a criminal street gang") knowingly trespass upon church property (second element: knowingly participate in any predicate criminal act) to attend a gang meeting elsewhere (third element: the predicate criminal act was committed "for the benefit of, at the direction of, or in association with the gang"), then upon conviction for violating Va. Code § 18.2-46.2, those two individuals have also committed a crime involving moral turpitude under the INA. But no one can seriously contend that two gang participants trespassing on church property to get from Point A to Point B is "inherently base, vile or depraved and contrary to accepted rules of morality and the duties owed between persons or to society in general." *Prudencio*, 669 F.3d at 484–85 (quoting *Matter of Olquin-Rufino*, 23 I. & N. Dec. at 896). Accordingly, under the categorical approach, not "all permutations of the conduct proscribed by the elements of the offense involve moral turpitude." *Martinez*, 892 F.3d at 658.

At bottom, neither Va. Code § 18.2-46.2's requirement that the defendant participated in a street gang nor its requirement that the predicate crime was committed "in association with" a criminal street gang ensure that a violation of the statute involves moral turpitude. Moreover, beyond pointing to the evil deeds of criminal street gangs writ large, neither the BIA's decision in this case nor its prior decision in *E.E. Hernandez* explains why non-morally turpitudinous conduct (here, the predicate criminal act) transforms into morally turpitudinous behavior simply because it was committed by or in

20

association with gang-related individuals. As such, the BIA's decision is not persuasive. And because 8 U.S.C. § 1227(a)(2)(A)(i) requires DHS to prove that an alien has a conviction for a crime involving moral turpitude in order to prove his eligibility for removal, DHS fails to meet its burden of proof based on the alien having a conviction for violating Va. Code § 18.2-46.2.

We find support for our conclusion in the well-reasoned opinion of the Ninth Circuit in *Hernandez-Gonzalez v. Holder*, 778 F.3d 793 (9th Cir. 2015).[7] There, the BIA held that the petitioner's conviction for weapons possession that was "committed for the benefit of, at the direction of, or in association with any criminal street gang" and "with the specific intent to promote, further, or assist in any criminal conduct by gang members" categorically constituted a crime involving moral turpitude. *Id.* at 797–98 (quoting Cal. Penal Code § 186.22(b)(1)). The Ninth Circuit reversed, and, with the

---

[7] *Hernadez-Gonzalez* also found unpersuasive the BIA's decision in *E.E. Hernandez*. 778 F.3d at 808. When deciding Cabrera's case, the BIA noted the conflict, but observed that it was bound by *E.E. Hernandez* given that it was a precedential decision of the BIA. *See* A.R. 19 n.1. We, of course, are not bound by either the Ninth Circuit's holding or *E.E. Hernandez*. Although *E.E. Hernandez* is a published decision by the BIA and thus afforded *Chevron* deference, it is afforded deference only in its interpretation of the INA, not in its interpretation of state law. *See, e.g.*, *Sijpati v. Boente*, 848 F.3d 210, 214 (4th Cir. 2017) (stating that *Chevron* deference is afforded to precedential decisions of the BIA concerning the agency's interpretation of the INA, meaning that its "interpretation of an ambiguous provision in the INA must be given controlling weight unless that interpretation is arbitrary, capricious, or manifestly contrary to the statute" (alteration in original)). Our analysis turns on the definition of a crime involving moral turpitude, the text of Va. Code § 18.2-46.2, and Virginia case law interpreting the statute's provisions. Many differences between California's gang-related enhancement and Va. Code § 18.2-46.2 exist and some of the Ninth Circuit's reasoning is inapplicable, but portions of its reasoning are nonetheless persuasive.

21

necessary changes to the text at issue here, its explanation applies equally to the gang-related elements of Va. Code § 18.2-46.2. Like the gang-related enhancement before the Ninth Circuit, the first and third elements of the Virginia statute "do[] not require an intent to injure, actual injury, or a protected class of victims. Nor does it require the use of any violence. Rather, the two elements of the gang enhancement" look solely to establishing an association with a criminal street gang. *Hernandez-Gonzalez*, 778 F.3d at 802. Similarly "[t]here is nothing in the statute that would prevent it from applying to run-of-the-mill criminal conduct. Of course, all gang-related criminal conduct is, at some level, both serious and morally questionable, but not all gang-related criminal conduct necessarily involves grave acts of baseness or depravity." *Id.* at 802–03.

In sum, we cannot say based on the sole fact that Va. Code § 18.2-46.2 punishes gang-related crimes that *all* convictions for violating Va. Code § 18.2-46.2 involve the requisite base, vile, and morally depraved conduct so as to be crimes involving moral turpitude. Acknowledging this truth in no way "minimize[s] the often serious, antisocial and morally depraved aspects of gang-related crime[s]." *Id.* at 805. We recognize only that not every act committed by a participant in a criminal street gang and in association with a criminal street gang involves moral turpitude. Given that an individual can be convicted under Va. Code § 18.2-46.2 for conduct that does not necessarily involve moral turpitude, it does not categorically qualify as a crime that does.

IV.

For the reasons stated above, we conclude that Virginia's statute prohibiting participation in criminal gang activity does not categorically qualify as a crime involving moral turpitude for purposes of 8 U.S.C. § 1227(a)(2)(A)(i). We therefore grant the petition for review, vacate the IJ's order of removal, and remand with instructions to terminate the removal proceedings.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED*
*WITH INSTRUCTIONS*