**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-1441**

MANUEL ANTONIO ORELLANA ALVARADO,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

**No. 22-1193**

MANUEL ANTONIO ORELLANA ALVARADO,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  October 28, 2022                    Decided:  December 9, 2022

Before WYNN and RUSHING, Circuit Judges, and MOTZ, Senior Circuit Judge.

2

---

Petition for review denied in part and dismissed in part by unpublished per curiam opinion.

---

**ARGUED:** Daniel Warren Thomann, DANIEL THOMANN, P.C., Chicago, Illinois, for Petitioner. Jessica Danielle Strokus, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian M. Boynton, Principal Deputy Assistant Attorney General, Anthony C. Payne, Assistant Director, Lance L. Jolley, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Manuel Orellana Alvarado seeks review of two orders of the Board of Immigration Appeals ("Board") denying his petition for withholding of removal and affirming the Immigration Judge's denial of relief under the Convention Against Torture ("CAT"). We conclude that his challenges are without merit in light of the steep standard of review.

Orellana Alvarado also contends that each Board decision was void *ab initio* because each was rendered by a Board member illicitly serving beyond their appointed term. But we lack jurisdiction to consider that argument because Orellana Alvarado failed to exhaust it before the Board. Accordingly, we deny the petition in part and dismiss it in part.

I.

Orellana Alvarado is a native and citizen of Honduras who has spent time in the United States sporadically since 1990, leading to three separate terms of imprisonment for illegal reentry. Following the completion of his first such sentence, Orellana Alvarado was removed to Honduras in April 2013.

In January 2014, Orellana Alvarado became a licensed cab driver in Honduras. Shortly thereafter, the MS-13 gang began to extort money from him weekly as a condition of permitting him to drive his cab. Armed gang members also forced Orellana Alvarado to give them rides, usually without pay. On one occasion, gang members got into his taxi at gunpoint, struck him with a gun, and forced him to drive them while they kidnapped another man. At times, gang members threatened to kill him.

3

The record supports that such extortion and violence directed at transportation workers was not uncommon in Honduras at the time. One 2019 news report stated that "an estimated 1,500 Hondurans driving buses or taxis [had] been murdered" since 2010. A.R. 584.[1]

Orellana Alvarado witnessed two such murders firsthand in May and August 2014. The second murder was of Orellana Alvarado's relative who had been forced to work for the gang but had decided to stop cooperating. Nobody was arrested for either murder that Orellana Alvarado witnessed.

After the August 2014 murder of his relative, Orellana Alvarado stopped driving his taxi and fled Honduras for the United States. He was arrested, served another sentence for illegal reentry, and was again removed.

Shortly after he returned to Honduras in 2017, Orellana Alvarado was on the street when he recognized some armed gang members, who told him to leave the area, or they would kill him. Apparently, a gang meeting was about to take place there.

Orellana Alvarado decided to again flee to the United States, reentering in December 2017. Once again, he was arrested and served a sentence for illegal reentry, after which he was transferred to immigration detention. Accordingly, he has been detained since late 2017. He has not heard from the gang during that time. Nevertheless, he testified that the gang members "don't forget anything" and that if he returns to Honduras, "[t]hey're going to kill [him]." A.R. 234.

---

[1] Citations to the "A.R." refer to the Certified Administrative Record filed by the parties in this case.

4

In March 2018, an asylum officer concluded that Orellana Alvarado had a reasonable fear of persecution or torture if removed to Honduras and referred him to the Immigration Court for further proceedings. Before the Immigration Court, Orellana Alvarado pursued claims for withholding of removal and protection under CAT. His proposed particular social group for the withholding-of-removal claim was "Honduran former taxi or transit drivers and/or business owners who have cooperated with MS-13 and subsequently stopped." A.R. 75.

The Immigration Judge initially granted withholding of removal to Orellana Alvarado. But in March 2021, a three-member panel of the Board sustained the Government's appeal as to that claim and remanded for consideration of the CAT claim. On remand, the Immigration Judge denied Orellana Alvarado's application for CAT relief. The Board affirmed in a single-member decision in December 2021. Orellana Alvarado petitioned this Court for review of both Board decisions.

## II.

Orellana Alvarado first alleges that the Board's decisions are inherently flawed due to the makeup of the panels that rendered the decisions. The three-member panel that issued the March 2021 Board decision included one temporary Board member who was serving her second six-month term, and the December 2021 decision was rendered by a single member also serving her second six-month term. Orellana Alvarado contends that the presence of these members makes both decisions "void *ab initio*" because, in his view,

5

temporary Board members cannot serve more than one six-month term per lifetime.[2] Opening Br. at 12. But we lack jurisdiction to consider this argument because Orellana Alvarado failed to exhaust it before the Board.

"A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). "We have interpreted this provision as a jurisdictional bar, holding that a noncitizen's failure to exhaust administrative remedies as to a particular claim bars judicial review of that claim." *Perez Vasquez v. Garland*, 4 F.4th 213, 228 (4th Cir. 2021). Generally, in order for a petitioner to have administratively exhausted a claim, "'the [Board of Immigration Appeals] [must] ha[ve] issued a definitive ruling on the issue raised in the petition for review'—even where the Board does so *sua sponte*, without the petitioner actually raising that issue before the Board." *Id.* (quoting *Cabrera v. Barr*, 930 F.3d 627, 633 (4th Cir. 2019)). Here, there is no dispute that Orellana Alvarado did not raise this matter before the Board, and that the Board did not address the matter in the first instance.

Nevertheless, Orellana Alvarado contends that he did not need to administratively exhaust the temporary-member claim because noncitizens need pursue only those "remedies available to [them] *as of right*." 8 U.S.C. § 1252(d)(1) (emphasis added). He notes that, by the time he found out which Board member or members issued the decisions,

---

[2] The regulation at issue provides that "[t]he Director may in his discretion designate" certain officials "to act as temporary Board members for terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4). The Government contests Orellana Alvarado's view of the regulation and argues that it simply limits temporary Board members to serving six months in *any given* term.

6

his only recourse was to file a motion to reopen or for reconsideration. And he contends that such a motion cannot properly be understood to be available "as of right" because if it is, then noncitizens must *always* be required to file such a motion, even when the Board has already spoken to the issue—a requirement that would be a pointless formality in the mine-run of cases.

To be sure, applicants "need not file a motion to reconsider the same argument the [Board] has already rejected in order to exhaust their remedies." *Cabrera*, 930 F.3d at 633; *see Shepherd v. Holder*, 678 F.3d 1171, 1177 (10th Cir. 2012) (collecting cases). But "[o]nly after the [Board] has rendered a decision on an argument or claim is that argument or claim said to have been exhausted." *Cabrera*, 930 F.3d at 631.[3] As noted, that did not happen here.

Orellana Alvarado contends it would have been fruitless to challenge the validity of the Board members' appointments before those very same Board members. Even assuming that is true, however, the exhaustion requirement applies even if the petitioner "is almost assuredly not going to prevail." *Id.* at 634; *see id.* ("An alien must exhaust all administrative remedies available to him, even if he reasonably predicts that these remedies are unlikely to do him any good." (quoting *Popal v. Gonzales*, 416 F.3d 249, 253 (3d Cir. 2005))).

---

[3] *See also Vasquez v. Garland*, No. 21-2393, 2022 WL 2355488, at *1 (4th Cir. June 30, 2022) (per curiam) (concluding that this Court lacked jurisdiction to consider an argument where the petitioner filed a motion for reconsideration before the Board but did not raise that particular argument); *Merino-Castro v. Lynch*, 650 F. App'x 831, 832 (4th Cir. 2016) (per curiam) (same).

Because Orellana Alvarado failed to raise his challenge to the presence of certain temporary Board members before the Board, we lack jurisdiction to consider it.

## III.

That brings us to the merits of the Board's decisions to deny Orellana Alvarado withholding-of-removal and CAT relief.[4] "When[, as with the March 2021 decision,] the [Board of Immigration Appeals] issue[s] its own opinion without adopting the [Immigration Judge]'s opinion, the [Board]'s decision constitutes the final order of removal, and accordingly we review that opinion and not the opinion of the [Immigration Judge]. When, as [with the December 2021 decision], the [Board] affirms the [Immigration Judge]'s decision with an opinion of its own, we review both decisions." *Garcia Hernandez v. Garland*, 27 F.4th 263, 266 n.* (4th Cir. 2022) (citation and internal quotation marks omitted). We must uphold the Board's decision "unless it is manifestly contrary to the law and an abuse of discretion." *Bedoya v. Barr*, 981 F.3d 240, 245 (4th Cir. 2020) (internal quotation marks omitted). The Board abuses its discretion when it "does not provide a reasoned explanation for its decision, . . . distorts or disregards important aspects of an applicant's claim," or "mak[es] an error of law." *Id.* (internal quotation marks omitted).

"We review factual findings for substantial evidence, and we will not disturb factual findings unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). "Thus, 'even if the record plausibly

---

[4] Two days before oral argument, the Government filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) raising an issue related to the Supreme Court's decision in *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020). We do not reach the Government's last-minute argument because we conclude that the petition is without merit in any event.

8

could support two results,' reversal is appropriate only where the evidence 'not only supports [the petitioner's] conclusion, but *compels* it.'" *Nolasco v. Garland*, 7 F.4th 180, 186 (4th Cir. 2021) (quoting *Tang v. Lynch*, 840 F.3d 176, 180 (4th Cir. 2016)). "Finally, we review legal rulings de novo." *Bedoya*, 981 F.3d at 245.

A.

Applicants seeking withholding of removal "must establish that they have been subjected to past persecution or have a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Perez Vasquez*, 4 F.4th at 221 (internal quotation marks and alterations omitted); *see id.* at 221 n.7 (noting that this standard applies to withholding of removal). Where, as here, the applicant relies on his membership in a particular social group, he "must establish 'that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" *Nolasco*, 7 F.4th at 187 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)).

The Board concluded that Orellana Alvarado's proposed particular social group of "Honduran former taxi or transit drivers and/or business owners who have cooperated with MS-13 and subsequently stopped" failed to satisfy the third requirement, social distinction. A.R. 75. While recognizing the significant evidence in the record of gangs targeting *current* transportation drivers, the Board concluded that the cited "evidence, though deeply disturbing, shows only that Honduran gangs punish drivers who *keep driving* after refusing to pay extortion demands; it does not show that gangs (or anyone else) take notice of *former*

9

drivers—people who, like the applicant, *quit driving* rather than turn over their income to gang members." A.R. 75–76.

The Board's finding was supported by substantial evidence. Certainly, it is not difficult to think of reasons a gang might choose to target those who ceased cooperating by stopping driving altogether just as the gang may target those who continue to drive but refuse to pay extortion. But such speculation cannot overcome a deficit in record evidence. And here, most of the evidence Orellana Alvarado points to is at best ambiguous about whether the targeted driver planned to cease cooperating by ceasing *payment* or by ceasing *driving*.

The most on-point evidence Orellana Alvarado cites is an affidavit in which his cousin avers, "If I ever want to stop driving a taxi, my options are leave the country or be killed." A.R. 425. This statement provides some support for the notion that the gang specifically targets *former* taxi drivers. But it could also be read to mean that gangs view former taxi drivers as belonging to *the same group* as current taxi drivers who cease cooperating in other ways.[5] *Cf. Nolasco*, 7 F.4th at 190 (noting record evidence suggesting that Salvadoran society views former gang members as "'forever ruined' because they

---

[5] Orellana Alvarado urges us to disregard the particular social group's use of the word "former" as "superfluous," and thus to consider the evidence related to taxi drivers who continue to drive but cease cooperating as relevant to former taxi drivers like himself. Opening Br. at 20. But it is up to a counseled petitioner to define his particular social group. *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 191 (B.I.A. 2018); *cf. Arevalo Quintero v. Garland*, 998 F.3d 612, 635 (4th Cir. 2021) (*W-Y-C-* does not apply to *pro se* asylum seekers). And here, Orellana Alvarado's counsel chose to define the group to include the word "former"—presumably to avoid potential immutability issues with defining a group to include *current* taxi drivers. *See Canales-Rivera v. Barr*, 948 F.3d 649, 657 (4th Cir. 2020).

10

never stop being part of the gang and therefore 'can't retire,' suggesting a lack of distinction between active and former members").

More importantly, "group recognition must be determined by the perception of society as a whole, rather than 'solely by the perception of an applicant's persecutors.'" *Id.* at 189 (quoting *Matter of W-G-R-*, 26 I. & N. Dec. 208, 218 (B.I.A. 2014)). And Orellana Alvarado has pointed to no evidence that Honduran society as a whole views former taxi drivers who have ceased cooperating with MS-13 as a distinct group.

Accordingly, we deny Orellana Alvarado's petition as to his withholding-of-removal claim.

B.

Orellana Alvarado's CAT claim fares no better. "To obtain protection from removal under the CAT, [a p]etitioner must show 'that it is *more likely than not* that he will be tortured if removed' to Honduras, and 'that this torture will occur at the hands of [the] government or with [its] consent or acquiescence.'" *Moreno-Osorio v. Garland*, 2 F.4th 245, 256 (4th Cir. 2021) (emphasis added) (quoting *Martinez v. Holder*, 740 F.3d 902, 913 (4th Cir. 2014), *as revised* (Jan. 27, 2014)).

As the Board noted, the record lacks evidence establishing a more-likely-than-not probability that Orellana Alvarado will face torture upon his removal to Honduras. Although he was threatened in 2017—three years after he ceased driving his taxi, and three years before his testimony in this case—the record is ambiguous as to whether that threat was related to his status as a former taxi driver or whether he was simply in the wrong place at the wrong time, namely, near the location of an apparent gang meeting. And while

11

Orellana Alvarado's expert noted ways in which the gang could track Orellana Alvarado down upon his return to Honduras, we cannot say that the record compels the conclusion that the gang has the desire to do so. According to the record before us, Orellana Alvarado has not been contacted by MS-13 since 2017; the gang also has not targeted or contacted his family members in Honduras, even though Orellana Alvarado's expert noted that is "usually" how gangs communicate threats to those who have left the country; and Orellana Alvarado has not yet tried relocating within the country. A.R. 294. Moreover, as discussed, there is very limited record evidence that the gang targets taxi drivers who cease driving, which Orellana Alvarado did eight years ago.

Orellana Alvarado contends the Immigration Judge should have reopened the record on remand and permitted him to provide updated evidence about whether MS-13 had contacted him in the year between his July 2020 testimony and the Immigration Judge's second decision in July 2021. But, as the Board noted in rejecting this argument, Orellana Alvarado "does not proffer or describe in any meaningful detail what information the additional evidence would have contained." A.R. 6. Nor did his counsel take the Immigration Judge up on her offer for counsel to file a motion to introduce new evidence. And in this appeal, Orellana Alvarado has never actually asserted that he *has* been contacted by the gang in the years since he was last in Honduras in 2017. So he points to no evidence that the Immigration Judge failed to develop.

We conclude that the Board did not abuse its discretion in affirming the dismissal of CAT relief.

12

IV.

For the foregoing reasons, the petition is

*DENIED IN PART AND DISMISSED IN PART.*